**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:20-cv-61241-RUIZ

APRIL HICKS,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

**DEFENDANT UNITED STATES OF AMERICA'S**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      Defendant, United States of America, by and through the undersigned Assistant United States Attorney, and pursuant to the Court's order [D.E. 21] hereby presents these proposed Findings of Fact and Conclusions of Law, and states the following:

**FINDINGS OF FACT**

**April Hicks**

      1.     Since her birth in 1979, April Hicks is a long-time resident of South Florida. In particular, Hicks used to live with, and is now a frequent visitor of her grandmother who lives off NW 5th Ct. in Lauderhill, Florida, in the immediate vicinity of the motor vehicle accident on June 24, 2018 that is the subject of this litigation ("the Accident"). Due to her familiarity with the neighborhood, Ms. Hicks also personally knows many of the individuals in the area.[1] Plaintiff Hicks has been involved in car accidents resulting in injuries before June 24, 2018. Plaintiff Hicks

_____

[1] Hicks Dep. 59:2-15; 174:11- 175:6.

has worked the past year assisting in directing traffic away from contractors, like Florida Power & Light, as they work. The job involves standing for extended periods of time outside.

### Pre-Accident Medical Care

2.      <u>Plaintiff's pre-existing injury to hand</u>.   In March 2009, Ms. Hicks sustained an injury to her right-hand, along the outer-edge from a knife, which required surgery.[2]  Ms. Hicks also received a partial disability payment in 2011 due to her inability to work as a result of this injury.[3] Ms. Hicks also reported to the hospital in 2014 for continuing pain to this same right-hand as a result of the injury.[4]

3.      <u>Plaintiff's pre-existing injury to neck/back/right arm in other car accidents</u>.  Ms. Hicks was a passenger in a car accident in her late teens/early-twenties which required chiropractic care to her neck and back.[5]  Subsequent to that incident, in 2008, Ms. Hicks was involved in another motor vehicle accident where she hit the dashboard with her head and right arm.[6]  Ms. Hicks was the driver in several additional motor vehicle accidents since 2008 where she claimed injuries as a result.[7]

### Tyrone Hilton

4.      On January 23, 2017, Tyrone Hilton began working for the United States Postal Service as a City Carrier Assistant, trained and authorized to deliver mail using USPS vehicles [8] and was based at the branch located at 1900 West Oakland Park Boulevard in June 2018.[9]  In

---

[2] Def. Ex. 23, Hicks v USA_Subpoena Records from Broward Health_0000026.
[3] Hicks Dep. 32:13- 34:19.
[4] Def. Ex. 23, Hicks v USA_Subpoena Records from Plantation General Hospital_000034-000036
[5] Hicks Dep. 124:22- 125:20.
[6] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute.
[7] Def. Ex. 26, Hicks_Subpoena Records from FLHSMV.
[8] Hilton Dep. 18:4-5.
[9] Hilton Dep. 24:13-15, Dep. Ex. 1.

February 2021, Hilton became "regular" and was transferred to a different branch location in Broward County.[10]

### The June 24, 2018 Accident

5.      On June 24, 2018 around 11:08 a.m., April Hicks, was the driver of her 2011 Audi A4 sedan in the far-right lane headed northbound on NW 31st Avenue in Lauderhill.  This avenue had 2 lanes for each direction of traffic, in addition to a median lane for making turns. The road was dry, and visibility and weather, clear and sunny.[11]



6.      As explained in his deposition, and will testify at trial, at 9:30 A.M. on June 24, 2018, Mr. Hilton began his shift to deliver packages.  He first grabbed his load tool scanner, and then went to look for a "cage" – a route to deliver.[13]  Upon loading his USPS vehicle identified as LLV No. 0227279 (the "USPS vehicle"), and leaving the USPS branch, he first stopped at the RaceTrac station on 2300 block of Oakland Park Boulevard before commencing his deliveries.[14]

---

[10] Hilton Dep. 16:12-17.
[11] Hilton Dep. 31:13-24; Hicks Dep. 174:11- 175:6.
[12] Def. Ex. 8, Report of Dr. Rentschler.
[13] Hilton Dep.16:1-7, 16:19-17:5.
[14] Hilton Dep. 23:15-25.

7.     While out delivering packages, the load tool scanner Mr. Hilton checked out upon reporting to work that day utilized the RIMS program which pinged Mr. Hilton's physical location during his shift regularly.[15]  Information captured through RIMS included such information as, the latitude and longitudinal coordinates, speed, and cardinal direction.[16]

8.     Mr. Hilton had been parked on the side of 31st Avenue, pulled over to the far-right shoulder which included a bike lane, and up against the curb of the sidewalk.  The USPS truck took up all of the bike lane and stuck out a bit into the far-right lane of traffic headed North on 31st Avenue.[17]  Mr. Hilton did not park on the sidewalk.[18]  Mr. Hilton also engaged his emergency brake and had his emergency flashers on.[19]

9.     At approximately 11:08 A.M., Mr. Hilton had just finished delivering a package at 412 NW 31st Avenue when he had returned to his USPS vehicle.[20]  Mr. Hilton put on his seat belt and had not yet turned on the engine before he saw in his rear-view mirrors a car quickly approaching in the far-right lane.[21]  This vehicle turned out to be Plaintiff's Audi A4.

10.     The impact of the Audi A4 with the rear-left corner of the USPS vehicle[22] pushed the USPS vehicle forward, and it spun and came to rest facing west.

---

[15] Hilton Dep. 27:25-28:1-7.
[16] Def. Ex. 2.
[17] Hilton Dep. 32:20-25. 37:1-7.
[18] Hilton Dep. 32:25 -33:1, 36:22-25.
[19] Hilton Dep. 33:18-25.
[20] Hilton Dep. 44, Ex. 3.
[21] Hilton Dep. 48:3-9, 51:4-18.
[22] Def. Ex. 8, Report of Dr. Rentschler.



11.     The vehicles were not moved after impact, and thus Deputy Turner with Broward County Sheriff's Office who reported to the scene was able to inspect and investigate the scene with the vehicles in their final rest position.

12.     The relevant eRIMS data shows that at 10:05:49 CST (i.e. 11:05:49 EST), the USPS truck was moving at 6 mph and facing 80 degrees with a location of 26.12487, -80.18862, equivalent to street address of 3211 NW 4th St., presumably Mr. Hilton's prior delivery location. The next two ping locations reflected on the eRIMS were from 10:06:48 A.M. and 10:07:49 A.M. (i.e. 11:06:48 A.M. and 11:07:49 A.M.), the USPS truck was going a speed of 0 mph and facing 357 degrees.   The GPS coordinates for both times match the approximate location of the Accident.[24]

---

[23] Def. Ex. 1, IMG_0897 BN 132.jpg.
[24] Def. Ex. 2.



[25]

13.     Lauderhill Fire Rescue also reported to the scene, having received a call at 11:07:50 A.M.[26] and placed a C-collar on Plaintiff.[27]  Ms. Hicks was transported by ambulance to Plantation General Hospital, and arrived at 11:39 a.m.[28]  The initial review of her condition found that the "Nexus C-spine criteria are negative" and in the absence of any other neurologic deficits or injuries, "[t]herefore the C-Collar has been removed and no imaging is required."[29]  Ms. Hicks left the hospital against medical advice shortly after 12:00 p.m.[30]  Ms. Hicks thereafter returned to the scene of the Accident.

14.     Both vehicles were towed from the scene of the Accident.  Repair records for the USPS truck totaled $4,703.13, and it cost $42.00 to tow.[31]  Ms. Hicks's Audi A4 was towed, but never retrieved by Ms. Hicks.[32]  Instead, Ms. Hicks's auto lender, National Auto Lenders, paid the

---

[25] Def. Ex. 1, IMG_0899 BN 134.jpg.

[26] Def. Ex. 5, Hicks v USA_Subpoena Records from Lauderhill Fire Rescue_000002.

[27] Def. Ex. 5, Hicks v USA_Subpoena Records from Lauderhill Fire Rescue_000001-000006.

[28] Def. Ex. 23, Hicks v USA_Subpoena Records from Plantation General Hospital_000009.

[29] Def. Ex. 23, Hicks v USA_Subpoena Records from Plantation General Hospital_000012.

[30] Def. Ex. 23, Hicks v USA_Subpoena Records from Plantation General Hospital_000009, 0000023.

[31] Def. Ex. 3, Hicks – USA production March 2021_000112-000114

[32] Def. Ex. 22, Hicks – USA production March 2021_00024.

towing bill of $1,11.97[33], and repossessed the Audi A4 due to Ms. Hicks's failure to make timely monthly payments.[34]  The lender thereafter sold the Audi A4 at auction, and issued a deficiency letter to Ms. Hicks for the amount still owed on the loan.[35]

15.    On August 28, 2019, Ms. Hicks (through her current counsel) submitted Standard Form 95 Claim for Damage, Injury or Death to the USPS (the "Administrative Claim") claiming $9,120.00 in property damage and $500,000.00 in personal injury as a result of the Accident.[36]



16.    In her operative First Amended Complaint, Plaintiff alleges that she suffered injuries as a result of the Accident.[37]  Defendant denied any allegations of negligence as it related to the Accident on the part of Mr. Hilton acting within the course and scope of his federal employment with USPS.[38]  Defendant further asserted the defenses of contributory fault by

---

[33] Def. Ex. 22, Hicks – USA production March 2021_00032; Def. Ex. 24, Hicks v USA_Subpoena Records from National Auto Lenders_000002.

[34] Def. Ex. 22, Hicks – USA production March 2021_00025; Def. Ex. 24, Hicks v USA_Subpoena Records from National Auto Lenders_000005, 000007, 000029.

[35] Def. Ex. 22, Hicks – USA production March 202_00025; Def. Ex. 24, Hicks v USA_Subpoena Records from National Auto Lenders_000032.

[36] Def. Ex. 22, Hicks – USA production March 2021_000001-000100.

[37] D.E. 17.

[38] D.E. 25.

Plaintiff, failure to mitigate her damages, lack of proximate cause, and sought set-offs for any amounts Plaintiff has already recovered from third parties, including any PIP benefits.[39]

17.     Defendant filed a Counterclaim against Plaintiff which sought to recover the costs to tow and repair the USPS vehicle.[40]  Plaintiff denies liability for Defendant's damages.[41]

## **Post-Accident Medical Care**

### Plaintiff's One Visit to Florida Spine and Joint Institute

18.     A few days after the Accident, on June 28, 2018, Plaintiff presented to Florida Spine and Joint Institute for treatment.  According to her initial paperwork, Plaintiff was represented by a different attorney than her current one[42], and executed a letter of protection in favor of Florida Spine and Joint Institute.[43]   In the patient paperwork, she completed a "MVA Intake Questionnaire" where she listed her automobile insurance as "Windhaven" and noted it was "just cancelled."[44]  Plaintiff also listed her estimated speed before impact as "25-30 mph."[45] Plaintiff also appears to indicate that after leaving the hospital, she returned to the scene of the Accident.[46] After her initial appointment on June 28, 2018, Plaintiff did not return for any treatment related to her injuries claimed as a result of the Accident.[47]   Plaintiff instead began treatment at another provider, Path Medical.

---

[39] D.E. 25, pp.7-9.

[40] D.E. 25, pp. 9-11.

[41] D.E. 26.

[42] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000117, 000130.

[43] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000122.

[44] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000100.

[45] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000100.

[46] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000100. The question read: "After the accident, I went: [select a box], Plaintiff wrote in "[b]ack to the seen [sic]".

[47] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_0000087-88, 91-121, 123-130.

Path Medical

19.     Almost three weeks after the Accident, on July 12, 2018, Plaintiff presented to Path Medical, claiming injuries related to the Accident.[48]  She admitted having previously seen a different provider after the Accident.[49]

20.     On this date, Plaintiff completed paperwork including a Medical Provider's Lien giving Path Medical, LLC a lien on any settlement claim, judgment or verdict as a result of the accident. Plaintiff specifically complained of headache, neck pain, back pain, and right-hand pain.[50]  At this initial visit, X-rays were taken of her cervical spine, thoracic spine, lumbar spine, and right-hand.[51]  Plaintiff admitted having "right hand repair" in 2010.   The report was signed by chiropractic physician, **Janice Stone**.

21.     At her visit to Path Medical on July 17, 2018, Plaintiff admitted being in prior motor vehicle accidents in 2010 and 2016 where she injured her back and neck.[52]  At this appointment, Plaintiff was prescribed physical therapy, anti-inflammatory medication ("NSAID"), and advised to return in four weeks.[53]  Plaintiff was seen by physician assistant, **Jennifer Weiss**.  At this visit, her provider executed the "Notice of Emergency Medical Condition."[54]

22.     In the "Initial Comprehensive Evaluation" dated August 1, 2018, **Tie Quan, M.D.** reviewed with Plaintiff the MRI's taken July 18, 2018, and advised Plaintiff to continue with NSAIDs and physical therapy for 4 weeks.[55]

---

[48] Def. Ex. 22, Hicks – USA production March 2021_000015, 000040-000045.
[49] Def. Ex. 22, Hicks – USA production March 2021_000040.
[50] Def. Ex. 22, Hicks – USA production March 2021_000040.
[51] Def. Ex. 22, Hicks – USA production March 2021_000040-000045.
[52] Def. Ex. 22, Hicks – USA production March 2021_000046.
[53] Def. Ex. 22, Hicks – USA production March 2021_000048.
[54] Def. Ex. 22, Hicks – USA production March 2021_000070.
[55] Def. Ex. 22, Hicks – USA production March 2021_000050-000053.

23.     Path Medical received notice from Plaintiff's automobile insurer by letter dated August 10, 2018, that her policy had been cancelled before the Accident, and thus any claims submitted were to be denied.[56]  Path Medical received a second notice on September 13, 2018.[57] Path Medical submitted claims for 12 subsequent visits after the initial notice.[58]

24.     The "Follow-up Evaluation" dated September 5, 2018 prepared by **Tie Quan, M.D**. included a nearly identical "plan of care" to that in the initial evaluation of August 1, 2018.[59]

<u>Plaintiff's Injuries Resulting from Ceiling Falling on her Head</u>

25.     On the evening of October 8, 2018, Lauderhill Fire Rescue reported to a 911 call placed by Plaintiff from her home where she reported a piece of the ceiling in her bathroom falling onto her head and injuring her.[60]  After they appeared at her home, Plaintiff declined to be transported to the hospital.[61]

26.     Nowhere in the notes of her visits to Path Medical subsequent to October 8, 2018, does Plaintiff disclose the subsequent injury to her neck, and her treaters note her condition as improving.[62] In fact, Plaintiff visited Path Medical on October 10, 2021, with no mention of the ceiling incident, and again on October 15, 2018, left her therapy session early[63], and again left early on November 8.[64]  The injuries allegedly resulting from the ceiling falling on her head were

---

[56] Def. Ex. 23, Hicks v USA_Subpoena Records from Path Medical_000216.
[57] Def. Ex. 23, Hicks v USA_Subpoena Records from Path Medical_000238.
[58] Def. Ex. 23, Hicks v USA_Subpoena Records from Path Medical_000166-000215.
[59] Def. Ex. 22, Hicks – USA production March 2021_000057-000062.
[60] Def. Ex. 5, Hicks v USA_Subpoena Records from Lauderhill Fire Rescue_000007-000013.
[61] Def. Ex. 5, Hicks v USA_Subpoena Records from Lauderhill Fire Rescue_000007-000013.
[62] Def. Ex. 22, Hicks – USA production March 2021_000040-000066, 000075-000100.
[63] Def. Ex. 22, Hicks – USA production March 2021_000095.
[64] Def. Ex. 22, Hicks – USA production March 2021_000098.

not noted in any Path Medical records reflecting her treatment and symptoms on October 16[65],

October 25[66], November 8[67], November 16[68], or November 21, 2018.[69]

      27.    In the "Final evaluation" dated November 21, 2018 prepared **Tie Quan M.D.**, Dr.

Quan notes Plaintiff reports improvement to her right-hand pain (rated by Plaintiff as 1 out of 10),

neck pain (rated by Plaintiff as 2 out of 10), and mid and lower back pain (rated by Plaintiff as 1

out of 10).[70]

> **SYMPTOMS:**
> Currently, the patient reports the following complaints:
> ***Right wrist/hand pain:*** This symptom came on immediately and is getting better. The
> intensity of the pain is mild. On a scale from 0 to 10, with 10 being the highest possible
> level of pain, she graded the pain as 1 and describes the feeling associated with this
> complaint as sharp and numbing. It appears in the morning and in the afternoon and is
> aggravated by ROM, lifting, and relieved by medication.
> ***Neck pain:*** This symptom came on immediately and is getting better. The intensity of
> the pain is mild. On a scale from 0 to 10, with 10 being the highest possible level of pain,
> she graded the pain as 2 and describes the feeling associated with this complaint as sharp
> and numbing. It appears in the morning and in the afternoon and is aggravated by ROM,
> lifting, and relieved by medication.
> ***Mid and lower back pain:*** This symptom came on immediately and is getting better. The
> intensity of the pain is mild. On a scale from 0 to 10, with 10 being the highest possible
> level of pain, she graded the pain as 1 and describes the feeling associated with this
> complaint as sharp and numbing. It appears in the morning and in the afternoon and is
> aggravated by ROM, lifting, and relieved by medication.                                 71

### University Orthopedic Care

      28.    While being treated at Path Medical, and after the ceiling incident on October 8,

2018, Plaintiff also began treatment at University Orthopedic Care, with her chief complaint being

"neck pain."[72]

---

[65] Def. Ex. 22, Hicks – USA production March 2021_000096.
[66] Def. Ex. 22, Hicks – USA production March 2021_000097.
[67] Def. Ex. 22, Hicks – USA production March 2021_000098.
[68] Def. Ex. 22, Hicks – USA production March 2021_000099.
[69] Def. Ex. 22, Hicks – USA production March 2021_000100.
[70] Hicks – USA production March 2021_000063.
[71] Hicks – USA production March 2021_000063 (emphasis added).
[72] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000001.

29.     One day before her first visit on October 31, 2018,[73] Path Medical faxed University Orthopedic Care a referral[74], Plaintiff's July 18, 2018 MRI reports of her cervical spine and lumbar spine[75] as well as copies of the Initial Examination Report dated July 12, 2018.[76]

30.     Before being seen by any providers, on October 31, 2018, Plaintiff completed preliminary new patient paperwork, which included signing a letter of protection in favor of Florida Orthopedics and Neurosurgery, LLC d/b/a University Orthopedic Care.[77] At her visit on October 31, 2018, Dr. Samuel Popinchalk prescribed Plaintiff the medications Zanaflex and Celebrex.[78]

31.     On November 14, 2018, received a cervical facet arthropathy at C3-C4, C4-C5, C5-C6.[79]

Plaintiff Returns to Florida Spine and Joint Institute of West Broward

32.     Plaintiff returned to Florida Spine and Joint Institute of West Broward for physical therapy treatments on November 1, 2018 relating to the ceiling incident.[80]  In her "patient information" forms filled out that same date, Plaintiff indicated she had retained an attorney by the name of "Lilas Ayandeh"[81] and executed a letter of protection listing an accident date of "10-20-

---

[73] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000005.
[74] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000033-000034.
[75] Def. Ex. 23, University Ortho p. 7-8
[76] Def. Ex. 23, University Ortho p. 19-24
[77] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000015.
[78] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000006.
[79] Def. Ex. 23, Hicks v USA_Subpoena Records from University Orthopedic Care_000001-000002.
[80] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_ 000008-000011.
[81] Def. Ex. 23, , Hicks_Subpoena Records from Florida Spine & Joint Institute_000057

18."[82]  Plaintiff also executed a document titled "financial responsibility policy" discussing the letter of protection.[83]

33.     Plaintiff visited Florida Spine and Joint 12 more times after the November 1 visit[84], which includes a visit on November 8, 2021 to perform three MRI's (i.e. of her cervical spine, shoulder, and brain).[85]

34.     The "initial examination narrative" dated November 15, 2018, explains "patient states that she was in her bathroom when the ceiling caved in and hit her on her head, neck, right shoulder, right leg and right foot. EMS arrived on the scene; however, the patient did not go to the hospital.  Her pain began immediately following the incident."[86]  She rated her neck pain as a "7-9/10."[87]  Plaintiff's initial treatment plan was for therapeutic treatments "5 times per week for approximately 12 visits."[88]

35.     For reasons unclear, Plaintiff filled out another set of new patient forms, all executed on December 21, 2018.[89]  She also saw **Dr. Peter Warheit** on that same day for "neck pain" and "right shoulder pain."[90]  Plaintiff rated her pain as a 3 out of 10 on a visual analog scale.[91]

---

[82] Def. Ex. 23, , Hicks_Subpoena Records from Florida Spine & Joint Institute_000060.  A copy of the executed letter of protection was sent to her the same attorney listed on the form. Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000061.
[83] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000073.
[84] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000008-000011.
[85] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000012, 0000055
[86] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000031.
[87] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000032.
[88] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000033.
[89] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_0000138-000161.
[90] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000132-000134.
[91] Def. Ex. 23, Hicks_Subpoena Records from Florida Spine & Joint Institute_000132.

## **Defense Expert Investigation and Opinions**

36.     Defendant has presented expert testimony and opinions regarding accident reconstruction.

### Accident Reconstruction Opinion

37.     Dr. Andrew J. Rentschler, an educated, trained, experienced and qualified accident reconstructionist, reviewed the available evidence and opined as follows:

Page 10                    ARCCA Accident Reconstruction Report              
August 9, 2021                    Hicks vs United States of America

In conclusion, the evidence in this matter is consistent with the accident scenario as set forth by Mr. Hilton. The damage profiles to the Audi A4 and the mail truck are consistent with the USPS mail truck being stopped along the right side of NW 31st Avenue when the front right side of the Audi impacted the left rear side of the mail truck. This caused the mail truck to rotate in a counter clockwise manner and come to rest facing west in the shoulder and right lane of northbound NW 31st Avenue. The evidence in this matter is inconsistent with the accident scenario as set forth by Ms. Hicks. According to Ms. Hicks, the mail truck was attempting to make a U-turn to head southbound and was sideways on NW 31st Avenue when the front of the Audi impacted just past the middle of the driver side of the mail truck. The damage to the vehicles is entirely inconsistent with this scenario. Based on the rest position of the mail truck, it could not have been traveling east across the roadway and then come to rest with the rear of the truck against the eastern sidewalk. The maximum area of intrusion for the Audi was along the passenger side of the front of the vehicle. This damage could not have occurred if the front of the Audi impacted just behind the middle of the driver side of the mail truck. Furthermore, an impact to the middle/rear driver side of the mail truck would have caused it to rotate in a counter clockwise manner and the truck would not have come to rest facing west, the same direction that it was allegedly traveling.

14



**Figure 3. Photographs of the 2011 Audi A4.**                                    [92]

38.     Thus, in accordance with unrebutted analysis of Dr. Rentschler regarding the significance of the damage profile of the vehicles post-Accident, this Court finds that the USPS vehicle was parked facing north on NW 31st Avenue when Ms. Hicks struck the rear-left corner with the front-right corner of her Audi A4.  Ms. Hicks's claims of hitting Mr. Hilton as he allegedly made a U-turn across NW 31st Avenue are not credible.

<u>Defense Medical Expert Investigation and Opinions</u>

39.     Defendant has presented expert testimony and opinions regarding radiology, magnetic resonance imaging,[93] and orthopedic surgery[94].

---

[92] Def. Ex. 8, Report of Dr. Rentschler; Def. Ex. 24, Hicks v USA_Subpoena Records from National Auto Lenders_000042.

[93] This Court is satisfied that Dr. Stein is a board-certified Radiologist, a medical doctor well qualified to testify competently as an expert regarding radiology, including but not limited to magnetic resonance imaging, techniques used in radiology. In addition, Dr. Stein is qualified to testify competently as an expert regarding medical care and causation in relation to acute, chronic, and pre-existing conditions. This Court is also satisfied that the methodology used by Dr. Stein to reach his conclusions is sufficiently reliable. This Court is also satisfied that this testimony will assist the Court, as trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine facts at issue.

[94] This Court is satisfied that Dr. Malloy is a board-certified orthopedic surgeon, a medical doctor well qualified to testify competently as an expert regarding orthopedics in general, and spine surgery in particular. In addition, Dr. Malloy is qualified to testify competently as an expert regarding medical care and causation in relation to acute, chronic, and pre-existing conditions. This Court is also satisfied that the methodology used by Dr. Malloy to reach his conclusions is sufficiently reliable. This Court is also satisfied that this testimony will assist the Court, as trier of

<u>Defendant's Radiologic Examination of Plaintiff's Medical Records</u>

40.    After reviewing Plaintiffs' pertinent medical records, imaging, and other material,

Dr. Kenneth Stein, M.D., Board Certified Radiologist, issued Expert Reports regarding the

imaging studies detailed above which support his expressed expert opinions that Plaintiff's injuries

were either pre-existing, or not attributable, to the Accident.[95]


<u>Defendant's Orthopedic Examination of Plaintiff and Plaintiff's Medical Records</u>

41.    After reviewing Plaintiffs' pertinent medical records, deposition testimony, and

other material, Dr. John P. Malloy, IV, board-certified orthopedic surgeon, issued Expert Report

which support his expressed expert opinions as follows[96]:

**Assessments**
1. Cervical spondylosis - M47.812 (Primary)
2. Lumbar spondylosis - M47.816

**Procedures**
After review of the patient's history (obtained from the patient as well as
patient's records) physical exam performed today, afore mentioned
records, clinical and diagnostic study findings; my opinions regarding Ms.
Hicks, within a reasonable degree of medical certainty are as follows:
Ms. Hicks did not sustain a permanent injury as a result of the motor
vehicle collision on 06/24/2018.
The subsequent treatment Ms. Hicks received is unrelated to the motor
vehicle collision which occurred on 6/24/2018.
Ms. Hicks does have a degenerative condition in her cervical and lumbar
spine.


Any need for future treatment of Ms. Hicks cervical or lumbar spine would
be unrelated to the motor vehicle collision which occurred on 6/24/2018.
Please feel free to contact me with any additional questions or concerns
you may have.
Sincerely,
Dr. John Malloy IV, DO.

---

fact, through the application of scientific, technical, or specialized expertise, to understand the
evidence or to determine facts at issue.
[95] Def. Ex. 17, Report of Kenneth Stein, M.D.; Def. Exs. 11, 12, 13.
[96] Def. Ex. 20, Report of John Malloy IV, D.O.

42.     Plaintiff has offered expert opinion of Dr. Thomas H. Roush, however, these opinions fail to address Plaintiff's pre-existing injuries to her neck, back, or right-hand, especially since he only reviewed the 2018 MRI's taken at Path Medical, and not her full medical history, which included MRI's before the Accident.  The opinions also do not consider the unrebutted analysis of Dr. Rentschler regarding the significance of the impact (between the USPS vehicle and Plaintiff's Audi A4 over three years prior). Nor do they consider the unrebutted opinions of Dr. Malloy and Dr. Stein in relation to the alleged damages stemming from this accident. Accordingly, this Court finds that the alleged permanent injuries of Plaintiff April Hicks are unexpected and therefore not attributable, to this motor vehicle accident.

## CONCLUSIONS OF LAW

1.     This is a personal injury action brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq*.

2.     This court has full jurisdiction over all matters in controversy and over the parties pursuant to the provisions of 28 U.S.C. § 1346.

3.     The Federal Tort Claims Act provides that the United States of America is liable for the injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment. 28 U.S.C. § 1346(b).

4.     The Act further provides that the law of the state where the allegedly negligent act or omission occurred governs. *See* 28 U.S.C. §2672.  Since the allegedly negligent act in this case occurred in Florida, the law of the State of Florida is applicable in determining the extent to which the United States of America may be liable.  *See Creekmore v. United States*, 905 F.2d 1508, 1510

(11th Cir. 1990) ("The Federal Tort Claims Act requires us to apply state law to determine the substantive liability of the United States.").

5.     No prejudgment interest and no punitive damages may be recovered from the United States.  28 U.S.C. § 2674.

6.     The burden of proving negligence is on the party asserting it.  Plaintiff must prove negligence by a preponderance of the evidence.  *Hensley v. United States*, 728 F. Supp. 716, 722 (S.D. Fla. 1989).

7.     To succeed in a negligence action in Florida, Plaintiff must show "(a) that it owed a duty to Plaintiffs; (b) it breached that duty; (c) there was a causal connection between its breach and Plaintiffs' injury; and (d) Plaintiffs suffered damages as a result of the breach." *Chi Nguyen v. Costco Wholesale Corp.*, 19-CV-80393, 2020 WL 1976215, at *4 (S.D. Fla. Apr. 24, 2020) (Marra, J.)(subsequent citation omitted).

8.     To establish proximate cause under Florida law, a plaintiff must show that "the defendant's alleged wrong caused the damage complained of." *Taylor v. United States,* NO. 09-10105-CIV, 2011 WL 32498 at *5 (S.D. Fla. Jan. 4, 2011) (quoting *Hensley,* 728 F. Supp. at 722)).

9.     Under Florida law, in a lawsuit for personal injury, a plaintiff bears the burden of proving that his medical bills were reasonable and necessary.  *USAA Cas. Ins. Co. v. Shelton*, 932 So. 2d 605, 608 (Fla. 2d DCA 2006); *Albertson's Inc. v. Brady*, 475 So. 2d 986, 988 (Fla. 2d DCA 1985).

10.     Plaintiff's claim for reasonable medical bills is limited to Plaintiff's out-of-pocket expenses, and any outstanding medical bills for which Plaintiff's providers have expressed an intent to pursue reimbursement.  § 768.76, Fla. Stat. (Collateral sources of indemnity); *Goble v. Frohman*, 901 So. 2d 830 (Fla. 2005) (contractual discounts negotiated between insurance

providers and healthcare providers are collateral sources subject to setoff); *Thyssenkrupp Elevator Corp v. Lasky*, 868 So. 2d 547, 549 (Fla 4th DCA 2003) (past medical expenses claimed by the Plaintiff must be "reduced . . .by the difference between the amounts charged by a provider and the amounts actually paid that provider by Medicare"); *Scheib v. Florida Sanitarium & Benev. Ass'n*, 759 F.2d 859 (11th Cir. 1985) (federal defendant entitled to the benefits available to health care providers under state law).

11.     In Florida, drivers are required to exercise reasonable care.  *See Nelson v. State*, 922 So. 2d 447, 450 (Fla. 2d DCA 2006) (citing *Miami Paper Co. v. Johnston*, 58 So. 2d 869, 871 (Fla. 1952)); *see also* Florida Standard Jury Instruction 4.1 ("Reasonable care is that degree of care under which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.")

12.     In pertinent part, Florida Statute § 316.1925 (Careless driving) provides:

> Any person operating a vehicle upon the streets or highways within the state shall drive the same in a careful and prudent manner, having regard for the width, grade, curves, corners, traffic, and all other attendant circumstances, so as not to endanger the life, limb, or property of any person. Failure to drive in such manner shall constitute careless driving and a violation of this section.

13.     Florida Motor Vehicle No-Fault Law (§627.730-§627.7405, Florida Statutes) The No-Fault Law exempts owners and operators of motor vehicles from tort liability for damages because of bodily injuries unless the claimant is able to meet a certain threshold for injury. §627.737(1). The threshold that must be met is:

> (2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.7405, or against any person or organization legally responsible for her or his

acts or omissions, ***a plaintiff may recover damages in tort*** for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation or use of such motor vehicle ***only in the event that the injury or disease consists in whole or in part of:***

 (a) ***Significant and permanent loss of an important bodily function.***
 (b) ***Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.***
 (c) ***Significant and permanent scarring or disfigurement.***
 (d) ***Death.***

§ 627.737(2), Fla. Stat. (emphasis added).

  14. Under Florida law, negligence is the failure to exercise due care under the circumstances. A person is negligent if he does something that a reasonable and prudent person would not ordinarily have done under the same or similar circumstances. A person is also negligent if he fails to do that which a reasonable and prudent person would have done under the same or similar circumstances. So it is that the amount of care which a person is required to exercise depends in a large measure on the extent to which his conduct may involve a risk of harm to others. As the likelihood that others may be injured increases, the amount of care which should be exercised also increases. *See Jacksonville Journal Co. v. Gilreath*, 104 So. 2d 865, 867 (Fla. 1958); *Ventrudo v. United States*, 205 F. Supp. 3d 1298, 1313-14 (M.D. Fla. Sept. 7, 2016) (applying standard in *Gilreath*).

  15. In Florida, negligence actions are governed by comparative fault rules under which each party is to be held liable for the particular party's percentage of fault.  § 768.81(3), Fla. Stat.; *American Home Assurance Co. v. Nat'l Railroad Passenger Corp.*, 908 So. 2d 459, 468-69 (Fla. 2005).

  16. Under Florida law, "there is a rebuttable presumption of negligence that attaches to the rear driver in a rear-end motor vehicle collision case." *Birge v. Charron*, 107 So. 3d 350, 353

(Fla. 2012). The fact presumed "is that the rear driver's negligence was the sole proximate cause" of the collision. *Id.* at 359 (quotation marks omitted).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      On June 24, 2018, Plaintiff was involved in a motor vehicle accident with a USPS vehicle operated by USPS employee, Tyrone Hilton.

2.      Tyrone Hilton was operating the USPS vehicle within the scope of his employment of USPS and with the USPS' knowledge, permission, actual consent, and/or implied consent.

3.      The location of the accident was the outermost northbound lane of 31st Avenue between 4th Court and 5th Court in Lauderhill, Florida, located within Broward County.

4.      On June 24, 2018, Plaintiff, April Hicks, was the driver of a 2011 Audi A4 sedan which rear-ended a 2001 Ford United States Postal Service vehicle, operated by the United States Postal Service employee, Tyrone Hilton.

5.      The rear-end impact occurred in the outermost northbound lane of 31st Avenue between 4th Court and 5th Court in Lauderhill, Florida, located within Broward County, while the USPS vehicle was parked on 31st Avenue to make a delivery.

April Hicks's Failure to Exercise of Due Care

6.      Based upon Florida law as applied to the facts of this case, the Court finds that the greater weight of the evidence supports the Defendant's assertion that Plaintiff breached her duty of care to Defendant as she allowed her Audi A4 to collide with the rear-end of the USPS vehicle which was stopped. Accordingly, this Court further finds that Plaintiff failed to exercise due care.

7.      Regarding damages, Defendant has offered the expert testimony of accident reconstructionist Dr. Andrew J. Rentschler, neuroradiologist Dr. Kenneth Stein, and orthopedic surgeon Dr. John P. Malloy, IV.  Each has performed a searching review of the available evidence

regarding both the Accident, as well as the extent and nature of the alleged injuries incurred therefrom.

8.      In contrast, Plaintiff has offered the expert opinion of Dr. Thomas Roush, her treating provider. However, these opinions are not based upon any review of the readily available evidence regarding the Accident or her past medical history.  For example, Dr. Roush did not consider whether any of Plaintiff's injuries were in fact pre-existing, nor did they take into account that she had sustained a subsequent injury to her neck only a few months after the Accident.  Nor do they consider the unrebutted analysis of Dr. Rentschler, or the unrebutted opinions of Dr. Stein and Dr. Malloy in relation to the alleged damages stemming from this accident. Dr. Roush's opinions do not consider alternative explanations for her medical condition as presented to him in by Plaintiff's first appointment on June 10, 2021, 5 days before her deposition, and almost three years post-Accident. Therefore, Dr. Roush's expert opinions are unreliable and not helpful to the Court in resolving the issues in this case.

9.      This Court finds that the alleged permanent injuries of Plaintiff are unexpected and therefore not attributable, to this motor vehicle accident. Plaintiff has not shown that she sustained significant injury and/or loss as the result of this accident. Accordingly, pursuant to Florida's Motor Vehicle No-Fault Law (§§627.730-627.7405. Fla. Stat.), the Defendant is exempt tort liability for damages because of bodily injuries because Plaintiff is unable to meet the applicable threshold for injury.  Nonetheless, Defendant would regardless not be liable for damages of bodily injuries of the Plaintiff because the Court finds that Plaintiff is the sole cause of the Accident.

10.     This Court further finds that since Defendant has established that Plaintiff was negligent and the sole cause of the Accident, Defendant is entitled to recover its damages as alleged in the Counterclaim relating to the tow and repair of the USPS vehicle.

## **CONCLUSIONS**

In considering the credible and relevant testimony detailed above, the Court finds that the evidence demonstrates that, Plaintiff has failed to prove Defendant's negligence by the standard set forth by applicable Florida law, and in fact, Defendant has proven the Plaintiff's negligence was the sole cause of the Accident, and thus Defendant prevails on its Counterclaim.

WHEREFORE, Defendant United States of America respectfully submits these proposed findings of fact and conclusions of law, and requests this Honorable Court to grant a verdict in its favor.

Dated: September 21, 2021                    Respectfully submitted,

**JUAN ANTONIO GONZALEZ**
**ACTING UNITED STATES ATTORNEY**

 By:    **Monica L. Haddad**
Monica L. Haddad
Assistant U.S. Attorney
Florida Bar No. 99426
Email: Monica.Haddad@usdoj.gov
U.S. Attorney's Office, Southern District of Florida
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 209-1004

and

Mary Beth Ricke
Assistant U.S. Attorney
Florida Bar No. 107213
E-mail: Mary.Ricke@usdoj.gov
500 East Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Telephone: (954) 660-5137

*Counsel for Defendant, United States of America*